STATE OF NEBRASKA, APPELLEE, v. LYLE JOE PELTON, JR., APPELLANT.

249 N. W. 2d 484

Filed January 19, 1977. No. 40743.

Padley & Dudden, for appellant.

Paul L. Douglas, Attorney General, and John R. Thompson, for appellee.

Heard before SPENCER, McCOWN, and CLINTON, JJ., and MORAN and KELLY, District Judges.

CLINTON, J.

The defendant, Lyle Joe Pelton, Jr., was convicted on a charge of possession of marijuana with intent to distribute or dispense, and was sentenced to a term of 1 year in the Nebraska Penal and Correctional Complex. This is a companion case to State v. Edwards, *ante* p. 354, 248 N. W. 2d 775, and the two cases were tried together in the District Court. The essential facts are stated in our opinion in the Edwards case and we will not restate them in this opinion except as we find necessary to amplify them in the disposition of the assignments of error made by Pelton.

He assigns and discusses the following claimed errors: (1) The evidence is insufficient to sustain the jury finding of guilty; (2) the search and seizure were unconstitutional and the trial court erred in not suppressing the admission into evidence of the suitcase and the marijuana contained therein; (3) the trial court erred in not granting Pelton's motion for a trial separate from that of Edwards; (4) the court erred in refusing to admit

into evidence two certain airbills for shipment of a suitcase and a box respectively from North Platte to Tucson and from Tucson to North Platte; (5) the court erred in refusing to give the defendant's suggested amendment to instruction No. 4 given by the court; and (6) the sentence is excessive. We affirm.

The sufficiency of the evidence as applicable to Edwards was discussed in State v. Edwards, *supra*. As to the defendant Pelton we need add only this. The evidence showed that Pelton picked up the suitcase consigned to him at the North Platte air terminal; that he knew the suitcase was to be shipped to him; that when he took possession of the suitcase he carried it 400 feet to Edwards' van, which Edwards was driving, where he deposited it in the vehicle; and that found in the suitcase after his arrest was a paper containing the following calculation: "22 LBS. at 110

$$
\begin{array}{r}
110 \\
22 \\
\hline
220 \\
2200 \\
\hline
2420 \text{ "}
\end{array}
$$

The evidence further showed that the weight of the marijuana contained in the suitcase was 22 pounds 3 ounces. The foregoing was sufficient to make a prima facie case that Pelton had knowledge of the contents of the suitcase. Pelton took the stand in his own behalf, denied that he knew what the suitcase contained, and explained that he had been told by Edwards that the suitcase would contain clothing belonging to Edwards and that he consented to have the suitcase consigned to him simply as an accommodation to Edwards because Edwards might not be in North Platte when the suitcase arrived. The cross-examination of Pelton rather clearly demonstrates the unreasonableness of Pelton's explanation. We need not give the details of the cross-examina-

tion. The partial import of it was that Pelton knew that Edwards was a brakeman for the Union Pacific Railroad Company; that his run was from North Platte to Grand Island; that he was in Grand Island regularly at the end of his run; and that there was simply no reason for Edwards to pay $12.60 to ship dirty clothing by air freight from Grand Island to North Platte when he could have transported the clothes himself on his regular run. The jury was not required to believe Pelton's explanation. The evidence is sufficient to sustain the conviction.

The search and seizure issue was determined in State v. Edwards, *supra*, and we need not discuss it further in this case. We simply point out that a search and seizure under almost identical circumstances was upheld in United States v. Issod, 508 F. 2d 990.

The issue of a separate trial for Pelton requires some further discussion because the situation of the two defendants was somewhat different. Pelton's contention that he should have been tried separately from Edwards is related to his contention that the court erred in refusing to admit certain evidence offered by him. We will therefore discuss these issues together. The basis of Pelton's motion was that if the two defendants were tried together certain undescribed evidence admissible against Edwards would be hearsay as to Pelton, and that cautionary instructions to the jury to disregard such hearsay evidence as to Pelton would be unavailing for the jury could not, as a practical matter, disregard such evidence. The only evidence offered and received which arguably could be characterized as hearsay was that of a conversation between Edwards and a Frontier Airlines employee which took place at the air terminal at North Platte at the time of Edwards' first attempt to pick up the suitcase. The substance of that conversation was that Edwards asked for the suitcase consigned to Pelton. The agent then asked Edwards if he was Pelton and Edwards said he was not. The employee then told Ed-

wards that the bill of lading required delivery to the consignee only and that the article would have to be picked up by the consignee who must furnish identification. Edwards then left. As our opinion in the Edwards case points out, Edwards later returned with Pelton who furnished identification and then took possession of the suitcase. At the time the conversation between Edwards and the airline employee was admitted, the airbill had already been received in evidence and testimony had already been adduced as to the fact of Pelton's later appearance with Edwards, the furnishing of identification by Pelton, the receipt of the suitcase by him, and the nature of the contents of the suitcase. At the time the conversation was admitted, foundation had been laid for the admission of the conversation as a part of the criminal transaction. It was substantive evidence relating to the corpus delicti and was admissible as such. The conversation by itself was not directly implicative of Pelton except in connection with and by reason of the prior foundation. Prima facie evidence of the crime in which both Pelton and Edwards were participating was already in. The evidence of the conversation was not hearsay, but was one of the operative facts evidencing the commission of a crime. The situation here is analogous to circumstances where the responsibility of one defendant as the driver of a get-away car in a bank robbery has been established and objection is later made to testimony that one of his accomplices said to the bank teller out of hearing of the defendant, "You didn't put all the money in the bag." No one could reasonably contend that the evidence was excludable as hearsay. If an utterance is itself an operative fact, the utterance is not hearsay. 4 Weinstein's Evidence (1975), pp. 801-59; Ristine v. Geigy Agricultural Chemicals, 188 Neb. 550, 198 N. W. 2d 199.

In this court Pelton offers some additional reasons why the joint trial was prejudicial to him and prevented him from having a fair trial. One contention relates

to the refusal of the court to admit Pelton's out-of-court statements exculpating him and incriminating Edwards, and another relates to the refusal of the court to admit the two airbills referred to in the third assignment of error. His contentions are not well taken.

Before Pelton took the stand in his own behalf, he sought to have introduced on cross-examination of one of the police officers the statement which Pelton had given to the officer the morning following his arrest. Its use by him would have the obvious advantages of getting his exculpatory statement before the jury and casting guilt solely on Edwards without subjecting Pelton to cross-examination unless he later chose to take the stand in his own behalf.

Such an out-of-court statement is inadmissible because it is hearsay and comes within none of the exceptions to the hearsay rule. Section 27-801, R. R. S. 1943, provides in part: "(3) Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted; and

"(4) A statement is not hearsay if:

"(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

It is apparent that the statement is hearsay under subsection (3). It cannot be admitted under the terms of subsection (4) (a) (ii) for Pelton had not yet testified at the time the offer was made and no express or implied charge of recent fabrication had been made by the State in any evidence offered by it. Neither does the statement qualify under any exception to the hearsay rule.

It was not: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 27-803(1), R. R. S. 1943. It does not qualify under section 27-803(2), R. R. S. 1943, which states: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." Pelton's state of mind or emotion at the time he gave the statement was not a material fact.

Pelton also contends that the refusal to grant him a separate trial was prejudicial because it led to the exclusion of exhibits 15 and 16 which are the airbills mentioned in assignment (4). Exhibit 15 bore the name of C. Edwards, North Platte, Nebraska, as shipper and Bill Murphy of Tucson, Arizona, as consignee, and related to the shipment of a 20-pound suitcase. Exhibit 16 bore the name of Verne Wisemon of Tucson as shipper and Charlie Edwards of North Platte, Nebraska, as consignee. This airbill pertained to a 32-pound "Box Records & tapes."

The foundation laid for exhibits 15 and 16 by Pelton was the testimony of the Frontier Airlines manager at North Platte that these two exhibits were the airline's copies of certain airbills. This witness could not identify either the shipper or the consignee, nor the persons who made the shipments or received them. No offer was made to show he knew the actual contents of the shipments. As to exhibit 16, Pelton elicited the testimony of one of the investigating officers. This officer was asked to testify as to the result of his investigation of the shipments evidenced by exhibits 15 and 16. It is apparent that hearsay testimony was being elicited and it is clear that the foundational offer made was insuf-

ficient in that the offer does not show the competency of the evidence. See State v. Fonville, *ante* p. 220, 248 N. W. 2d 27. It was not the fact that Pelton and Edwards were being tried together that made exhibits 15 and 16 inadmissible. It was the failure of Pelton to lay or offer a proper foundation to show the relevance and materiality of the facts. Pelton would have been entitled to show, if he could, immediately previous solo drug operations by Edwards as tending to show his co-defendant's sole responsibility in this case. The court did not err in sustaining the objections.

Pelton next contends that because the defenses of the two defendants were antagonistic a separate trial should have been granted. His position seems to be that where one defendant seeks to put the sole responsibility on the other, they are entitled to separate trials. The mere claim that defenses of codefendants are antagonistic is insufficient reason to grant separate trials where the charges against all the defendants result from the same series of acts and would be proved by similar evidence. United States v. Lebron, 222 F. 2d 531; United States v. Van Allen, 28 F.R.D. 329. See, also, State v. Rice, 188 Neb. 728, 199 N. W. 2d 480. Even if we were to assume arguendo that such a principle has legal merit, Pelton establishes no prejudice in this particular case. Edwards did not offer evidence attempting to place responsibility on Pelton. It may be that Pelton's contention is that had there been separate trials he might have been able to use Edwards as a witness. If so, the contention still lacks merit. Even if tried separately Edwards could have exercised his Fifth Amendment rights to refuse to testify, just as he did in this case. And, of course, if separate trials were granted, only one defendant could be tried first. The fact that one defendant wishes to use the other as a witness does not of itself entitle him to a separate trial. Gorin v. United States, 313 F. 2d 641. Pelton has not established that he should have been granted a separate trial.

Instruction No. 4 given by the court defined the elements of the crime. Among these elements was: "That such possession of marijuana occurred knowingly or intentionally." The amendment to the instruction proffered by Pelton would have added: "and with knowledge by the defendants of the controlled and chemical nature of the marijuana which they possessed."

Section 28-4,125, R. R. S. 1943, in part provides: ". . . it shall be unlawful for any person knowingly or intentionally: (a) To . . . possess with intent to . . . distribute, deliver, or dispense, a controlled substance." Section 28-4,117, R. R. S. 1943, lists the various controlled substances, including among them marijuana. Certain other statutes define who or under what circumstances persons may lawfully possess such substances. None of the statutes make any requirement that the defendant know "the controlled and chemical nature" of the substance. It seems apparent that by using the terms "knowingly" or "intentionally" the law intends to exclude innocent or unwitting possession. Even the most casual examination of section 28-4,117, R. R. S. 1943, evidences a legislative intent not to require knowledge of the chemical nature of the substance. If that were not true only a highly skilled and knowledgeable chemist could be properly charged under the Controlled Substances Act. What drug pusher, for example, would know the chemical nature of the opiates "alphacetylmethadol" or "ethylmethylthiambutene"? The requested amendment to instruction No. 4 did not correctly define an element of the crime and it was not error to refuse the request.

The possible sentences for the crime of which defendant was convicted are: ". . . imprisonment for not less than one year nor more than five years, . . . or a fine of not more than two thousand dollars," or "imprisonment in the county jail of not more than six months," or both fine and imprisonment. § 28-4,125(2) (b), R. R. S. 1943. Defendant has a rather lengthy history of

convictions for various misdemeanors and admits a substantial history of usage of various drugs. The trial court found that he was not a good risk for probation and that confinement in the county jail would not be conducive to reform. We cannot say that the sentence involved an abuse of discretion.

AFFIRMED.