STATE OF NEBRASKA, APPELLEE, V. JOHN L. AUSTIN, APPELLANT.
510 N.W.2d 375

Filed April 13, 1993.   No. A-92-377.

Dennis R. Keefe, Lancaster County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

MILLER-LERMAN, Judge.

Appellant, John L. Austin, was charged with assault in the third degree, Neb. Rev. Stat. § 28-310(1)(b) (Reissue 1989), and carrying a concealed weapon, Neb. Rev. Stat. § 28-1202 (Reissue 1989). Following trial on April 13, 1990, a jury of the county court for Lancaster County found Austin guilty of assault in the third degree and not guilty of carrying a concealed weapon. Following the submission of posttrial motions, the county court set aside the jury verdict as against the weight of the evidence. The State appealed to the district court for Lancaster County, which reversed the judgment and remanded the cause. On July 3, 1991, the county court reinstated the verdict of guilty on the assault charge and fined Austin $100. Austin appealed to the district court, which affirmed the conviction. This appeal followed. For the reasons recited below, we reverse the judgment and remand the cause.

On appeal, Austin claims that the district court erred (1) in approving the evidentiary ruling of the trial court which

excluded testimony of witness Patricia King, regarding a prior consistent statement and (2) in finding that the evidence was sufficient to establish Austin's guilt beyond a reasonable doubt.

## FACTS

A review of the record for facts relevant to this appeal shows that Austin appeared in county court on December 8, 1989, to request an extension of time to pay a fine. It appears that Austin is something of a court-watcher and is known to Lancaster County court and city government personnel. Austin is a veteran, is familiar with firearms, and has four guns. On December 8, when he went to the courthouse, he was dressed in combat boots, overalls, a jacket, a vest, and "my Colt .45." Austin stated that when he wears this outfit, neither the jacket nor the vest conceals the weapon. Austin said he leaves his gun in the holster because he does not "believe in taking it out and flashing it around and stuff like that." The clip was not in the gun the morning of December 8, and Austin had placed a red bandanna where the clip would normally be. Following his appearance, Austin was denied his request for an extension of time to pay fines and was ordered to sit out his traffic fines and costs in the county jail.

After the courtroom proceedings, Robert LaRocca, a public service officer with the Lincoln Police Department, was directed to take Austin and two other individuals, Anthony Martin and David Costephens, to jail. LaRocca followed the three prisoners to the jail elevator. LaRocca testified that while in the elevator he asked the three prisoners for their weapons. LaRocca testified that Austin gave him three knives and that then they all stepped off the elevator. LaRocca stated he then noticed that "there was a little black inlay around the right side underneath [Austin's] vest," so he asked Austin what it was. LaRocca's trial testimony continued as follows:

Q And how did he respond?

A Well, I took my eyes off him and looked at the other two prisoners, and when I came back to look at him, he had a .45. Come straight up saying, "It's my .45," and kept it coming straight up towards my head.

Q And when you said you looked at the other two

prisoners, you glanced away at them, is that right?

A Yes.

Q And you glanced back at Mr. Austin, and that's when you saw him with the gun?

A Yes.

Q And which hand did he have the gun in?

A In his right hand.

Q And did you see the barrel of the gun?

A Yes, I did.

Q And where was the barrel pointed?

A Right towards my head.

Q Now, when he brought this gun up, did he bring it up, straight up in front of him?

A Straight in front of me.

Q Okay. Was he facing you at that time?

A Yes, he was.

Q How far away was he?

A Just about two feet.

Q Okay. And what did you do at that point?

A At that point I grabbed the barrel of the weapon and shoved it up into the air.

Q Okay. Did Mr. Austin still have a hold on that when you grabbed it and pushed it up in the air?

A Yes, he did.

Q Did you attempt to take that — that gun from him?

A Yes.

Q Did he resist you in that attempt?

A Yes, he was still holding on to it when I tried to snap it out of his hand.

Q When you saw the gun pointed at you, were you frightened of it?

A Yes, I was.

After the episode with Austin, LaRocca prepared an incident report. According to the report, he asked for weapons, was given Austin's knives, noticed a "pouch" on Austin's hip, and asked what was in the pouch. LaRocca wrote that Austin told LaRocca it was a ".45." LaRocca then wrote, "I told . . . subject [Austin] I need to take weapon from him . . . ." The report did not indicate that Austin put up any resistance.

Martin testified that he was in the courtroom while Austin was there on December 8, 1989, and was transported with Austin. Martin did not notice the gun until LaRocca commented on it. Martin stated that Austin gave the gun to LaRocca with the barrel pointing toward LaRocca's belly, but that there was nothing unusual about the way Austin handed the gun to LaRocca and that Austin offered no resistance. Martin stated the gun was given to LaRocca by Austin with a "friendly hand."

Costephens testified that he was in the courtroom with Austin and noticed that Austin was wearing a gun belt with a gun in the holster in the courtroom. Costephens testified that he knew the gun was not loaded because there was a red bandanna stuck where the clip goes. At trial, Costephens testified as follows:

Q Okay. When you were going down the elevator, did you see if Mr. Austin had anything in his hand?

A He had a briefcase.

Q You got off the elevator; the officer asked if you had any knives, is that what you said?

A Uh-huh.

Q And what happened?

A Me and another kid said that we didn't have none. And John took out three knives. And the officer said, "What's that on your hip?" John said, "It's nothing, just my .45." And the officer said that he needed to have it. John reached down, undid the holster, pulled the gun out and attempted to hand it to the officer.

Q What do you mean attempted to hand it to the officer?

A He just pulled it out and was going to hand it to him.

Q Did he hand it to the officer?

A Yes, he did.

Q Did you — how close were you to the officer and Mr. Austin when this happened?

A About three feet away.

Q Was anything obstructing your view?

A No.

Q Did you ever see Mr. Austin point that gun at the

officer's head?

A No, I didn't.

Q Did you ever see any struggle between the officer and Mr. Austin over the gun?

A No.

Investigator Dennis Duckworth was recalled as a rebuttal witness by the State. Duckworth stated that he had interviewed Costephens on December 8, 1989, and that Costephens never told Duckworth he had seen a holster, gun belt, or weapon on Austin in the courtroom or while on the elevator. Duckworth testified as follows:

When I interviewed Mr. Costphens [sic], I asked him if at any time he had observed a gun, a gun belt on Mr. Austin, and he said no. They were in the courtroom together; they'd ridden down the elevator together. And the first time that he had seen it was outside the control room when PSO LaRocca had asked about the weapons.

Duckworth testified that he had prepared a report to the same effect. The report was not admitted into evidence.

The defense called Patricia King as a surrebuttal witness. King is an investigator for the public defender's office. As part of her investigation for the public defender's office, King testified that she had contacted Costephens on February 8, 1990. At trial, King was asked the following question:

Q Did you specifically read to Mr. Costephens from Officer Duckworth's report the following: "Both Martin and Costephens said they did not notice that Austin was wearing a gun belt or holster or seen [sic] the weapon on him in the time that they were in court or when they came down the elevator until LaRocca mentioned it"? Did you read that statement to Mr. Costephens on February 8th?

A Yes, I believe that's a correct statement. . . .

When King was asked to tell the jury what Costephens' response to Duckworth's statement was, the State objected on the grounds of hearsay.

A bench conference was conducted. The defense made the following offer of proof:

MR. KEEFE: . . . [I]f Ms. King were allowed to testify . . . she would testify that after she read the quotation,

which I just mentioned from Officer Duckworth's report, Mr. Costephens said to her immediately after she finished reading the quotation, "Well, I noticed the holster and when he came into the courtroom, I seen he had a bandana stuck in where his clip's supposed to be, and just hanging out of it." And Patty King said, "He had a bandana in the holster?" And he said, "In the clip, where the clip goes in the 45." And Patty said, "Oh, you could actually see the 45." And he said, "Well, seen the grip of it." She said, "You saw the grip?" And he said, "Umm-umm." Patty said, "The holster is kind of like a fold-over holster?", and he said, "Yeah." And she said, "And you can still see it?" And he said, "Part of it, yeah. He had a red bandana sticking out of it." That's the end of the offer of proof.

The court sustained the objection.

### PRIOR CONSISTENT STATEMENT

On appeal, Austin argues that it was prejudicial error for the trial court to have excluded King's testimony about her interview with Costephens, which testimony amounted to a prior consistent statement by Costephens that Austin was plainly wearing a gun in the courtroom and, because the bandanna was stuck where the clip goes, that the gun was not loaded. A review of the record shows that Costephens testified at trial that Austin wore the gun with the red bandanna in it to the courtroom. Costephens was cross-examined by the State as follows:

Q And isn't it true that you told Officer Duckworth when he asked you about that that you did not notice Mr. Austin wearing a gun belt or holster or seeing the weapon on him during the time you were in the court [room] or when you came down the elevator until Officer LaRocca mentioned it?

A No. I told him that I did see one before going into the courtroom.

Q You didn't tell — you — you didn't tell Officer — Officer Duckworth that you never saw it before he pulled it out?

A Yeah, I did.

This line of cross-examination implied that Costephens' recollection was not reliable and that his trial testimony had been recently fabricated. As noted above, Duckworth was called to rebut Costephens' testimony. Duckworth testified that Costephens never told him that he had seen a holster, gun belt, gun, or bandanna prior to LaRocca's mentioning a gun to Austin. Defense counsel then called King as a surrebuttal witness to testify as to Costephens' statement to her of February 8, 1990, which was consistent with his trial testimony. Costephens' statement to King was prior to trial and consistent with his trial testimony. As noted above, the State objected to King's proffered testimony as hearsay and, after an offer of proof, the objection was sustained.

On appeal, the district court found that King's proffered testimony was hearsay and did not fall within any exception to the hearsay rule. The district court further ruled that if King's proffered testimony were considered a prior consistent statement, as argued by the defense, it was inadmissible under Neb. Evid. R. 801(4)(a)(ii), Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1989), because it is a "statement *subsequent* to any implied plan or contrivance." (Emphasis in original.) With respect to this comment by the district court, this court understands the district court to mean that Costephens' statement to King on February 8, 1990, was made after his statement to Duckworth on December 8, 1989, and, therefore, was not a prior consistent statement. The district court also ruled that "the determination of the admissibility of evidence generally rests within the said discretion of the trial court." As recited more fully below, contrary to the district court's conclusions, this court holds that the proffered testimony was not hearsay, that it was admissible as a prior consistent statement, that its admission was not discretionary, and that the exclusion of King's proffered testimony was not harmless error.

The law is clear that in proceedings where statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in determining admissibility. State v. Coleman, 239 Neb. 800, 478 N.W.2d 349 (1992); State v. Schwartz, 239 Neb. 84, 474 N.W.2d

461 (1991); *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). The controlling rule of evidence applicable to this case is the prior consistent statement rule, which reads as follows:

(4) A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him or recent fabrication or improper influence or motive . . . .

Neb. Evid. R. 801.

With respect to the requirements for admissibility under rule 801(4)(a)(ii), the declarant must testify at trial, which Costephens did. The declarant must be subject to cross-examination concerning the statement, which Costephens was. The statement offered must be consistent with the declarant's testimony, which it was. The statement must be offered to rebut a charge of recent fabrication, which it was. The proffer of evidence made clear that the requirements for admission of King's testimony as a prior consistent statement were met. Furthermore, under the language of rule 801(4)(a)(ii), a prior consistent statement is not hearsay. *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985). It has been observed that "[a] prior consistent statement may be accorded substantive use only if it is used to *rebut* an express or implied charge [of recent fabrication, and] impeachment of the witness is a precondition." (Emphasis in original.) 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 801(d)(1)(B)[01] (1992). See, also, *State v. Smith*, 241 Neb. 311, 488 N.W.2d 33 (1992). In the instant case, King's testimony was offered as substantive evidence presented to rebut a charge of recent fabrication.

On appeal, the district court remarked that the statement may have been offered "not for the truth of the matter asserted and, therefore, not hearsay. If admitted, a limiting instruction would have been required." The district court's remark is inconsistent with the use of prior consistent statements under the Nebraska rules of evidence. It can be observed that Nebraska's evidence rule regarding prior consistent statements,

found at rule 801(4)(a)(ii), is the same as the corresponding federal rule of evidence, Fed. Evid. R. 801(d)(1)(B), and it has been held that the Nebraska rule is subject to the same interpretation. *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980). See, also, *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985). The current prior consistent statement rule varies from the traditional usage of prior consistent statements, as the notes to the advisory committee on the proposed federal rules of evidence show. Those notes state:

> Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence. Under the rule they are substantive evidence. The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally.

Fed. R. Evid. 28 U.S.C. at 773 (1988).

The Nebraska Supreme Court Committee on Practice and Procedure has also observed: "[Proposed rule 801(4)(a)(ii)] admitting prior consistent statements of a witness substantively is limited to the standard 'recent fabrication' limitation. The substantive use of such evidence . . . changes Nebraska law. . . ." Proposed Neb. Evid. R. 801(d)(1)(B) cmt. (Tentative Draft 1973). Thus, under the current prior consistent statement rule, the statement is received as substantive evidence and need not be accompanied by a limiting instruction.

Although all the statutory requirements for admission of the prior consistent statement were met, the district court found the proffered statement inadmissible because it was made after the impeaching statement. In so ruling, the district court relied on *State v. Johnson*, 220 Neb. at 400-01, 370 N.W.2d at 142, in which it was stated as follows:

> If an attack on a witness' credibility through use of an inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, proof of a prior consistent statement before the plan or contrivance was formed tends "strongly to disprove that the testimony was the result of contrivance .

> . . . It is for the judge to decide whether the impeachment amounts to a charge of contrivance . . . ."

We interpret this remark in *Johnson* to mean that a statement which agrees with trial testimony made before an impeaching statement tends to disprove contrivance. We do not read this remark to add an additional requirement to rule 801(4)(a)(ii), such as the district court did, to the effect that to be admissible, the prior consistent statement need predate the impeaching statement. Under the language of the rule, the prior consistent statement need predate only the trial testimony with which it is consistent.

Altering statutory evidentiary rules by adding additional requirements for admissibility is disfavored. The U.S. Supreme Court recently observed in a case involving a different rule of evidence that "[t]o respect [the] determination [of Congress], we must enforce the words that it enacted. . . . This Court cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases." *United States v. Salerno*, ____ U.S. ____, 112 S. Ct. 2503, 2507, 120 L. Ed. 2d 255 (1992).

The district court's additional requirement to rule 801(4)(a)(ii) is not supported by the statute or case law. Indeed, relevant case law is to the contrary. In *Packett*, the Nebraska Supreme Court cited *United States v. Scholle*, 553 F.2d 1109 (8th Cir. 1977), *cert. denied* 434 U.S. 940, 98 S. Ct. 432, 54 L. Ed. 2d 300, with approval. In *Scholle*, an appellate challenge was made to the admission of a prior consistent statement made after the impeaching remark. The U.S. Court of Appeals for the Eighth Circuit found the prior consistent statement admissible and specifically held that "[t]his court has rejected the proposition that to be admissible, prior consistent statements must have been made prior to the impeaching statements, noting that 'this seems an unnecessary refinement.' " 553 F.2d at 1122. We agree with this holding of the U.S. Court of Appeals for the Eighth Circuit. We therefore conclude that where a prior consistent statement is relevant, *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985), and meets the statutory requirements of rule 801(4)(a)(ii), it is not rendered inadmissible because it was made after the impeaching

statement. The exclusion of King's testimony regarding Costephens' prior consistent statement was error.

## PREJUDICE

On appeal, the State argues that appellant has the burden of demonstrating that prejudice resulted from the trial court's erroneous ruling and that, in any event, the exclusion of King's testimony regarding Costephens' prior consistent statement was harmless error. We do not agree with the State's standard requiring a reversal or the suggested outcome. The law is well settled that "[i]n a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt." *State v. Drinkwalter*, 242 Neb. 40, 49, 493 N.W.2d 319, 325 (1992). Accord, *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). Accordingly, prejudice to appellant will be presumed unless the State persuades the appellate court to the contrary.

In an effort to persuade this court that the exclusion of King's proffered testimony was harmless error, the State argues that the statement, if admitted, would not have rehabilitated Costephens, that the substance of the proffered testimony was cumulative, and that the proffered testimony was unnecessary because the jury appears to have believed some of Costephens' trial testimony, as shown by Austin's acquittal on the charge of carrying a concealed weapon. In response, appellant argues that the admission of the proffered testimony is relevant to whether LaRocca was threatened in a menacing manner and to rehabilitate Costephens, a key witness whose testimony relates to the assault charge.

This court has carefully reviewed the record. We note the fact that Austin was acquitted on the charge of carrying a concealed weapon. At the center of the trial were LaRocca and Austin, the testimony of whom is in conflict. LaRocca testified that he did not see the Colt .45 until after the prisoners were off the jail elevator and that then he was assaulted by Austin. Austin testified essentially that his Colt .45 was obvious and that he handed it over to LaRocca in a nonthreatening manner. Two

other eyewitnesses, Martin and Costephens, testified. The testimony of these witnesses was no doubt important to the jury in assessing the competing versions of events as recounted by LaRocca and Austin. When Costephens' credibility was put in doubt by the suggestion of recent fabrication, the value of his testimony fell into question. The defense, under the prior consistent statement rule, was entitled to attempt to rehabilitate Costephens and let the jury thereafter evaluate his testimony. See *United States v. Scholle*, 553 F.2d 1109 (8th Cir. 1977), *cert. denied* 434 U.S. 940, 98 S. Ct. 432, 54 L. Ed. 2d 300. Austin was denied this testimonial right. This court notes that Costephens' direct testimony was consistent with Austin's testimony that Austin handed over the gun without incident. The unanswered attack on Costephens' credibility effectuated an attack on Costephens' recitation of events relevant to the assault charge. Had the prior consistent statement been allowed, the defense would have had an additional, arguably believable, witness contradicting LaRocca's testimony. LaRocca's testimony contained many inconsistencies which the trial judge identified in setting aside the verdict. The prior consistent statement of Costephens may well have been important to the jury in weighing the totality of the evidence.

This court notes that *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), is frequently cited for the standard outlining the harmless error rule. *Chapman* involved a case where the prosecutor's argument and the trial court's instructions repeatedly impressed on the jury the defendant's failure to testify and suggested that because of this failure, the inferences drawn from the State's evidence had to be interpreted in favor of the State. The U.S. Supreme Court held that the trial court erred in allowing comment to be made regarding a defendant's right to be silent. The defendants were entitled to a "trial free from the pressure of unconstitutional inferences." 386 U.S. at 26. The error was harmful because it affected a substantial right, and the State had failed to prove it was harmless.

In cases of improper admission of evidence, it is well settled that an evidentiary ruling will be harmless "when a defendant's conviction is supported by overwhelming evidence which has

been properly admitted or admitted without objection." *State v. Coleman*, 239 Neb. at 814, 478 N.W.2d at 358. Our review of the record does not show overwhelming evidence to support a conviction of third degree assault. In the instant case, Austin was convicted of third degree assault, which consists of "[t]hreaten[ing] another in a menacing manner." § 28-310(1)(b). LaRocca testified that he did not see the gun until the prisoners were off the elevator, and when he saw it, he was frightened, although his incident report does not so state. Austin's testimony contradicted LaRocca's version of events. The testimony of Martin was that Austin handed LaRocca the gun with a "friendly hand." Had Costephens' prior consistent statement come in regarding the obviousness of Austin's gun in the courtroom—heralded by a red bandanna in the clip—the jury may have reached a different conclusion as to the threat and charged assault. As the Nebraska Supreme Court recently observed in evaluating the harmfulness of an erroneous evidentiary ruling, "We cannot determine how the jury in this case would have evaluated the remaining evidence if" its evaluation had been limited to proper evidence. *State v. Drinkwalter*, 242 Neb. 40, 49, 493 N.W.2d 319, 326 (1992). "Likewise, we cannot determine the effect on the jury" had other testimony been stricken. *Id.* After reviewing the record carefully, we are unable to say that the error of excluding the proffered testimony of Costephens' prior consistent statement was harmless beyond a reasonable doubt.

In view of our conclusions regarding the admissibility of evidence, we do not reach appellant's assignment of error regarding the sufficiency of the evidence. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.