STATE OF NEBRASKA, APPELLEE, V. LOUISE MORRIS, APPELLANT.

554 N.W.2d 627

Filed October 25, 1996.   No. S-94-1197.

Peter K. Blakeslee for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Louise Morris was convicted by a jury of one count of first degree sexual assault on a child and two counts of sexual assault of a child. She appealed to the Nebraska Court of Appeals, which affirmed the convictions and sentences. Morris petitioned for further review, which we granted.

## SCOPE OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by those rules, not by judicial discretion, except in those instances in which the rules make judicial discretion a factor. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994).

## FACTS

In November 1993, Morris was charged with one count of first degree sexual assault on a child and one count of sexual assault of a child for assaults on her daughter, Nicole T., and one count of sexual assault of a child for assaults on her son, Jason T. These assaults allegedly occurred from January 1983 to December 1988, when Nicole was between 4 and 10 years of age and when Jason was between 1 and 7 years of age.

Morris and Gene T. were married in 1978. The family lived in a trailer home near Seward and later moved to a house in Seward, on Eighth Street. Morris left the family in March 1989 and moved to Grand Island, where she remarried. The children remained in the father's home, and in January 1990, he was awarded custody in the final divorce decree. The father remarried in November 1990.

After Jenny B., the stepmother, moved in, the father and stepmother began to have problems with Jason. He became violent, had nightmares, and wet the bed. About the same time, Nicole began losing weight. Both children were taken to Pioneer treatment center for evaluation. In July 1992, Jason was taken to Lincoln General Hospital, where he stayed for approximately 3 months. It was determined that he required additional treatment, and he was admitted to Epworth Village, a residential treatment center for children.

In October 1992, the father and stepmother visited Jason at Epworth Village. It was during this visit that Jason told them he had been sexually abused by Morris. Jason also told them that Nicole knew about the abuse. When the father and stepmother questioned Nicole about the abuse, she ran upstairs and started beating her head on the floor, saying that she wanted to die.

Jason was 12 at the time he testified at trial. He stated that he did not tell anyone about the assaults at the time they happened because Morris told him not to tell. Jason testified that Morris touched his penis. He testified that he touched Morris' private parts because she told him to do so and that this happened both at the trailer and at the house on Eighth Street. He stated that Sandra Kroeker, a clinical social worker, was the first person he told about the abuse.

Nicole was 15 at the time she testified. She had lived with Morris in the trailer, and she testified that while they lived there, Morris would touch her breasts and vagina as often as twice a week. These incidents allegedly happened from about the time Nicole was 4 until she was 10. This alleged touching continued after the family moved to the house on Eighth Street, but was not as frequent. Nicole testified that she had seen her mother have sexual contact with Jason since he was 1 or 2 years old and that Morris threatened to hurt her or her father if she told anyone about the assaults. Nicole did not tell anyone until after Jason told Kroeker about the assaults.

Kroeker testified that during her first session with Jason on October 29, 1992, he told her he had been sexually abused by his mother. Kroeker was told by Jason that his mother would pick him up from school, bring him home, take his pants off, and rub his penis. Jason also watched his mother engage in sexual intercourse with different men. On November 5, Jason told Kroeker that his mother frequently engaged him in sexual contact with her. She would rub his penis and would have him touch her breasts and vagina. Morris also had Jason dress as a girl and then masturbate his sister while Morris watched. On January 15, 1993, Jason completed an anatomical drawing to help identify the parts of his body that were touched and to focus in on what had happened. He continued to relate the sexual abuse at each session Kroeker had with him, and his state-

ments to her regarding the abuse were consistent throughout his reporting. Kroeker testified that it is common for children to delay reporting abuse by a family member.

The children's stepmother testified that Jason told her in October 1992 that Kroeker was counseling him and that he had been sexually assaulted by Morris.

Dr. Kathryn Benes, a psychologist who evaluated Jason at Lincoln General Hospital prior to his counseling with Kroeker, testified that Jason suffered from depression and posttraumatic stress disorder. Benes specifically asked Jason if anyone had touched him in a way that made him feel uncomfortable, and he said no. Benes testified that it is not unusual for a child to not report the abuse to an adult because children who have been sexually abused by adults often do not trust other adults.

Sherry Lave, the police officer who was assigned to interview Nicole at the time the abuse was reported, testified that during her interview with Nicole, she was told that Morris had touched Nicole inappropriately on numerous occasions and that the abuse began when Nicole was 4 or 5 years old. Lave stated that Nicole said she had been touched all over on her breasts, that Morris had inserted her fingers into Nicole's vaginal area, and that Morris had instructed Nicole on various occasions to touch Jason's penis. Nicole indicated to Lave that some of Morris' male acquaintances had sexually assaulted Nicole and that Morris was present when this occurred.

At trial, during cross-examination of the children, it was suggested by the defense that the children had fabricated the allegations and that the children had been subjected to improper influence by the father, the stepmother, Kroeker, and Lave. Morris argues that the alleged improper influence first occurred on October 29, 1992, when Jason first met with Kroeker. The children's statements to these witnesses were all made after Jason was interviewed by Kroeker on October 29 and were consistent with the initial reporting of abuse.

Four witnesses testified at trial over Morris' continuing hearsay objection to what Nicole and Jason had told them. The witnesses were Eunice Williams, the director of therapeutic services and a psychotherapist at Epworth Village; Gordon Hall, the director of life skills training at Epworth Village, who pro-

vided weekly individual therapy for Jason during his 6-month stay at Epworth Village; Christy Weber, a registered nurse employed at Epworth Village as the director of health care services and admissions coordinator; and Karl Hoehler, a deputy sheriff of Seward County who was involved in the investigation of Jason's allegations.

Williams, Hall, Weber, and Hoehler each testified that during the course of his or her respective professional duties, Jason told him or her that he had been sexually abused by Morris. Williams testified that both Nicole and Jason told her that they had been sexually abused by Morris. Hall testified that Jason had told him that Jason had been sexually abused by Morris. Weber testified that after Jason had reported the sexual abuse to Kroeker, he told Weber about the sexual abuse. Hoehler testified that Jason made detailed statements to him about the sexual abuse during his investigation.

Morris was convicted on all three counts. The Court of Appeals affirmed the convictions and sentences. The court stated that if *Tome v. United States*, 513 U.S. 150, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995), controlled this case, the testimony of Williams, Hall, Weber, and Hoehler regarding the children's statements to them would be inadmissible as hearsay. The Court of Appeals concluded that it was bound by the Nebraska Supreme Court's interpretation of Neb. Evid. R. 801(4)(a)(ii), and having found that the statements made to and repeated by Williams, Hall, Weber, and Hoehler were prior consistent statements under *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993), the Court of Appeals held that they were admissible under rule 801(4)(a)(ii). The court stated:

> [I]n addition to the four witnesses to whose testimony Morris objected, the children, the father, the stepmother, Kroeker, and another police officer testified to the same or similar instances when the children had made prior statements that were consistent with their in-court testimony. We recognize that the procedure was followed by Morris' counsel in an attempt to create error under the *Tlamka* holding, the only course open to him at the time. However, this tactic had the effect of letting into evidence many prior consistent statements that would have been excluded

under *Tome*, and thus the testimony of the four witnesses to which Morris did object was cumulative and could not have prejudiced Morris.

*State v. Morris*, 4 Neb. App. 250, 262-63, 541 N.W.2d 423, 430-31 (1995). The Court of Appeals held that if a victim's statement is challenged at trial as being the product of improper influence or fabrication, then any consistent statement by the victim made prior to the trial testimony is admissible. As noted by the Court of Appeals, this interpretation of rule 801(4)(a)(ii) is contrary to the U.S. Supreme Court's interpretation of Fed. R. Evid. 801(d)(1)(B), as set forth in the Court's opinion in *Tome*.

## ASSIGNMENTS OF ERROR

Morris claims the Court of Appeals erred in holding that the prior consistent statements were admissible and in finding that the prior consistent statements, even if inadmissible, were cumulative to other evidence and were therefore not prejudicial.

## ANALYSIS

We first consider whether the U.S. Supreme Court's interpretation in *Tome* of Fed. R. Evid. 801(d)(1)(B), which rule is set forth as Neb. Evid. R. 801(4)(a)(ii), should be adopted by this court. Our opinions in *State v. Tlamka, supra*; *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985); *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985); *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980); and *State v. Pelton*, 197 Neb. 412, 249 N.W.2d 484 (1977), do not give a clear interpretation of the rule and may, in some cases, conflict with the U.S. Supreme Court's interpretation of the rule in *Tome*.

Rule 801(4)(a)(ii) provides:

A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

In *Tome*, the child victim testified that her father had sexually assaulted her. The father asserted as a defense that the child had been subjected to undue influence, which caused the child to make incriminating statements. The prosecution then called six witnesses who testified as to statements the child made after the time when the father alleged that the child had been subjected to the undue influence. The trial court permitted the testimony, finding that the evidence was admissible pursuant to Fed. R. Evid. 801(d)(1)(B). The U.S. Court of Appeals for the 10th Circuit affirmed, holding that the statements were admissible even though they were made after the alleged motive to fabricate arose.

The U.S. Supreme Court reversed, holding that the rule permitted the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charge of recent fabrication or improper influence or motive. Quoting McCormick and Wigmore, the Court noted: "'[T]he applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made before the source of the bias, interest, influence or incapacity originated.' E. Cleary, McCormick on Evidence § 49, p. 105 (2d ed. 1972) . . . ." *Tome v. United States*, 513 U.S. 150, 156, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995). The Court stated that if Congress had intended to permit an out-of-court consistent statement regardless of when it was made, Congress could have adopted a rule providing that "'a witness' prior consistent statements are admissible whenever relevant to assess the witness's [sic] truthfulness or accuracy,'" *Tome*, 513 U.S. at 159, but that Congress had not enacted such a rule and that the narrow rule enacted by Congress could not be so applied.

The prevailing common-law rule dealing with prior consistent statements that existed before the adoption of the federal rules of evidence provided that a consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive was admissible if the statement was made before the alleged fabrication, influence, or motive came into being, but was inadmissible if made afterward. The Court reasoned

that the adoption of Fed. R. Evid. 801(d)(1)(B) did not change this interpretation. "A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive. By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved." *Tome*, 513 U.S. at 158. The Court stated that

> [i]f consistent statements are admissible without reference to the time frame we find imbedded in . . . Rule [801(d)(1)(B)], there appears no sound reason not to admit consistent statements to rebut other forms of impeachment as well. Whatever objections can be leveled against limiting the Rule to this designated form of impeachment and confining the rebuttal to those statements made before the fabrication or improper influence or motive arose, it is clear to us that the drafters of Rule 801(d)(1)(B) were relying upon the common-law temporal requirement.

*Tome*, 513 U.S. at 159. Recognizing that in certain cases it may be difficult to determine when the alleged fabrication, influence, or motive occurred, the Court pointed out that a majority of the common-law courts had been performing this task for over a century. "[T]he thing to be rebutted must be identified, so the date of its origin cannot be that much more difficult to ascertain." *Tome*, 513 U.S. at 166.

A brief discussion of our prior decisions involving rule 801(4)(a)(ii) is necessary for our present consideration of the rule. One critical distinction between some of the prior Nebraska cases addressing rule 801(4)(a)(ii) and the case at bar is the time when the improper influence took place. In *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993), and *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994), the defendants failed to specify when the witnesses were improperly influenced. In these cases, the defendants made general allegations that the victims' testimony had been improperly influenced or recently fabricated, but did not direct the court to the specific time of the improper influence. In the case at bar, the challenged statements were made after the initial interview by Kroeker in October 1992.

In *Tlamka*, the defendant was convicted of first degree sexual assault on a child. He appealed, and the Court of Appeals

affirmed the conviction. We granted further review, but limited our review to the admissibility of the victim's statement made to an investigating officer 3 days after the assault. At trial, over Tlamka's hearsay objections, the investigating officer stated that he asked the victim what happened and had her use dolls to show him what occurred. The officer testified that the victim told him that vaginal penetration occurred and that Tlamka had placed his penis in her mouth. This statement to the officer was consistent with what the child had earlier told the parents. At trial, the victim testified on direct examination that Tlamka had sexual contact with her. On cross-examination, Tlamka's counsel questioned the victim concerning statements she had made in a pretrial deposition, the implication being that someone had coached the victim in articulating the assault. Defense counsel implied with this questioning that the victim's testimony was the product of improper influence. We found that the victim's statement at trial was consistent with what she told the officer, and therefore, the statement to the officer could properly have been admitted under rule 801(4)(a)(ii). Our opinion.in *Tlamka* did not establish when the improper influence was to have occurred. Tlamka's counsel focused on the victim's statements made in a pretrial deposition taken after the statement made to the officer. We did not address whether the alleged improper influence occurred prior to the statement to the officer.

In *Huebner*, we held that the trial court did not abuse its discretion in admitting the testimony of a social worker and a counselor regarding details of the sexual assault as prior consistent statements. The incident which led to Huebner's conviction occurred in December 1989. It was not reported until July 1990, and the complaint was not filed until November 1991. At trial, a social worker and a counselor testified about the details of the assault, and another social worker testified as an expert regarding reasons why child victims delay reporting sexual assaults. Huebner asserted that the State intended to gain a tactical advantage by providing the victim with counseling in order to use her as a credible witness at trial. Huebner produced no evidence showing that the State had attempted to manipulate the counseling sessions in order to improperly mold the victim's

testimony and, more importantly, did not allege when the improper influence took place.

Huebner claimed that the trial court had erred in admitting the testimony of the social worker and the counselor as to the details of the assault. The victim testified prior to such testimony, and during her cross-examination, it was suggested that she had fabricated the story because she did not like the relationship between Huebner and her mother.

In *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985), Gregory contended that the trial court erred in receiving the rebuttal testimony of Sgt. Walter Cooper, because it was improper rebuttal and hearsay. Cooper testified that he interviewed the shooting victim's son, Scott Drickey, and Scott's friend, Charlie Murrin, on the day of the shooting, and at that time, the boys said they had gone to Gregory's house to get some additional newspapers for their route and waited outside the door. They told Cooper that the victim was shot while he was standing outside the house and fell into the house after he was shot. Gregory had previously testified that the two boys waited inside his house to receive the newspapers and that at the time he was shot, the victim was inside the house charging at Gregory. Gregory expressly charged that the boys had recently fabricated their trial testimony. The date of any improper influence or motive was not set forth in our opinion. We found that under the circumstances, it was clear that the statements about which the police sergeant testified were not hearsay, citing *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985).

In *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980), there was no contention that the witnesses' testimony was the result of recent fabrication or improper influence, and therefore, rule 801(4)(a)(ii) was not a factor in the court's ruling denying the admission of the tape-recorded statement.

In *State v. Pelton*, 197 Neb. 412, 249 N.W.2d 484 (1977), before Pelton took the stand, he sought to have introduced on cross-examination of one of the police officers the statement which Pelton had given to the officer the morning following his arrest. Pelton had not yet testified at the time the offer was made, and no express or implied charge of recent fabrication had been made by the State in any evidence offered by the State.

In *State v. Austin*, 1 Neb. App. 716, 510 N.W.2d 375 (1993), Austin argued that it was prejudicial error for the trial court to have excluded a prior consistent statement by a witness that Austin was plainly wearing a gun in the courtroom. On cross-examination, the State implied that the witness' trial testimony had been recently fabricated. The Court of Appeals concluded that the prior consistent statement need predate only the trial testimony with which it is consistent. The trial court had determined that although all the statutory requirements for admission of the prior consistent statement were met, the proffered statement was inadmissible because it was a " 'statement *subsequent* to any implied plan or contrivance.' " See *Austin*, 1 Neb. App. at 723, 510 N.W.2d at 379. The trial court had relied upon our decision in *Johnson*, in which we stated:

> If an attack on a witness' credibility through use of an inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, proof of a prior consistent statement before the plan or contrivance was formed tends "strongly to disprove that the testimony was the result of contrivance. . . ."

220 Neb. at 400-01, 370 N.W.2d at 142. In *Austin*, the Court of Appeals did not interpret *Johnson* as requiring the prior consistent statement to predate the impeaching statement, but that such statement need predate only the trial testimony with which it is consistent.

Morris argues that the Court of Appeals erred in not following the U.S. Supreme Court's decision in *Tome v. United States*, 513 U.S. 150, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995). As pointed out above, Fed. R. Evid. 801(d)(1)(B) is set forth as Neb. Evid. R. 801(4)(a)(ii). In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by those rules, not by judicial discretion, except in those instances in which the rules make judicial discretion a factor. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994).

In order to minimize the amount of judicial discretion and therefore control the admissibility of evidence by rule as much as possible, we interpret rule 801(4)(a)(ii) to permit the introduction of a declarant's consistent out-of-court statements to

rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive. See *Tome v. U.S., supra.* To the extent that our decisions in *Tlamka, Huebner, Gregory, Johnson, Packett,* and *Pelton* may be inconsistent with this interpretation of rule 801(4)(a)(ii), they are not authority for an interpretation of the rule that is inconsistent with this opinion. Therefore, under our interpretation of rule 801(4)(a)(ii), the testimony of Williams, Hall, Weber, and Hoehler regarding what Jason told them was erroneously admitted.

We next address whether the testimony of Williams, Hall, Weber, and Hoehler was cumulative and therefore harmless error. In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Hernandez,* 242 Neb. 78, 493 N.W.2d 181 (1992). Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to the substantial right of the defendant. *State v. Coleman,* 239 Neb. 800, 478 N.W.2d 349 (1992). Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence properly admitted, or admitted without objection, supports the finding of the trier of fact. *State v. Hernandez, supra; State v. Coleman, supra.* Cumulative evidence means evidence tending to prove the same point to which other evidence has been offered. *Id.* If other evidence in the record clearly establishes the facts supported by inadmissible evidence, the court neither abused its discretion nor prejudiced the defendant by receiving inadmissible evidence. See *State v. Lenz,* 227 Neb. 692, 419 N.W.2d 670 (1988).

Williams testified that after Jason told Kroeker the details of the abuse, Jason told Williams that Jason's biological mother had abused him, but Jason did not give Williams specific details. Over Morris' hearsay objection, Hall was asked whether Jason told him that Jason had been sexually abused by his mother. Hall replied yes. Hall further testified that Jason had

told him that Jason had been abused by his biological mother and that he was angry because of the abuse. Weber testified that after Jason was placed at Epworth Village, she had verbal contact with him in preparing him for consultation services for medical problems relating to abuse. When asked whether Jason had made a statement to her regarding whether he had been sexually abused, she responded yes. Over Morris' hearsay objection, Weber testified that Jason said that his mother had sexually abused him, that she had touched his penis, and that she had made him touch his sister. Over Morris' hearsay objection, Hoehler testified that Jason told him that when Jason was in kindergarten, he had "relations" with Morris which occurred about twice a week. She would take him into the bedroom, take his clothes off, and rub his penis. She would take her clothes off and make Jason touch her breasts and vagina.

Although similar testimony from the victims, the father, the stepmother, Kroeker, and Lave was admitted without objection, we conclude that the testimony of Williams, Hall, Weber, and Hoehler was prejudicial and could have materially influenced the jury.

We cannot say beyond a reasonable doubt that the erroneously admitted evidence did not prejudice Morris or that the State has demonstrated beyond a reasonable doubt that the erroneous admission of evidence in this case was harmless. We therefore reverse the judgment of conviction and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, C.J., dissenting.

The majority in its opinion expressly adopts the bright-line rule of *Tome v. United States*, 513 U.S. 150, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995), and interprets Neb. Evid. R. 801(4)(a)(ii) to allow the introduction of a declarant's consistent out-of-court statements to rebut charges of improper influence or recent fabrication only when those consistent statements were made prior to the alleged act of improper influence or recent fabrication. I disagree.

According to the Nebraska Evidence Rules, a prior consistent statement is not hearsay if (1) the declarant testifies at trial, (2) the declarant is subject to cross-examination concerning the

statement, and (3) the statement is consistent with the declarant's testimony and is offered to rebut a charge of recent fabrication or improper influence. See Neb. Evid. R. 801(4)(a)(ii). The plain language of the statute requires only these elements in order to admit a prior consistent statement and does not limit the admission of the statement based on the timing of the utterance.

The majority applies the U.S. Supreme Court's holding in *Tome* to exclude all prior consistent statements made after the charge of recent fabrication because Nebraska's rule 801(4)(a)(ii) is patterned after Fed. R. Evid. 801(d)(1)(B). I disagree with this extension of the plain language of the Nebraska rule.

In matters involving the interpretation of state law, we are bound to consider only our own decisions and are not required to apply U.S. Supreme Court decisions. *Patteson v. Johnson*, 219 Neb. 852, 367 N.W.2d 123 (1985). When interpreting a state statute, the U.S. Supreme Court is also bound to consider the interpretation of the statute by the state's highest court. *Wisconsin v. Mitchell*, 508 U.S. 476, 113 S. Ct. 2194, 124 L. Ed. 2d 436 (1993).

In the interpretation of the Nebraska rule of evidence at issue in this instance, our cases have consistently held that rule 801(4)(a)(ii) allows for the admission of prior consistent statements when an opponent implies that a declarant's testimony is false. See, *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993); *State v. Smith*, 241 Neb. 311, 488 N.W.2d 33 (1992). Prior consistent statements are not rendered inadmissible simply because they were made after the charge of recent fabrication or improper influence.

In the instant case, the adoption of the bright-line rule set forth in *Tome* results in the exclusion of all prior consistent statements made by Jason and Nicole to Williams, Hall, Weber, and Hoehler. The majority in its decision excludes these prior statements despite the fact that all of the statements were essentially consistent with the children's in-court testimony and despite the fact that the charge of recent fabrication was not made until the cross-examination of Jason. See *State v.*

*Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992) (holding that prior statements are consistent when additional details are not contradictory or collateral to victim's testimony).

The majority's decision in this case is violative of the plain meaning of Neb. Evid. R. 801(4)(a)(ii), our own precedent, and common sense. As the dissenting Justices stated in *Tome*, "[T]he effect of admission on the trial will be minimal because the prior consistent statements will (by their nature) do no more than repeat in-court testimony." 513 U.S. at 176.

To add the timing requirement set forth in the majority's opinion to Neb. Evid. R. 801(4)(a)(ii) allows a defendant to eliminate prior consistent statements by the imaginative use of the charge of recent fabrication. In this case, Morris alleged for the first time at trial that Jason's statements to the social worker on October 29, 1992—the first disclosure by Jason of the abuse—were the product of improper influence. Thus, Morris succeeded in relating the allegation back to the first disclosure of the abuse and in so doing prevented the jury from hearing the prior consistent statements made by Jason to others when the social worker was not present to allegedly influence his statements.

For the foregoing reasons, I would hold that, when the charge of recent fabrication or improper influence is made at trial, all consistent statements made prior to trial are admissible. I would, therefore, affirm the trial court's admission of the prior consistent statements made to Williams, Hall, Weber, and Hoehler.

FAHRNBRUCH and LANPHIER, JJ., join in this dissent