CHUCK R. PATTESON, APPELLEE AND CROSS-APPELLANT, v. RAY
A.C. JOHNSON, APPELLANT AND CROSS-APPELLEE.

367 N.W.2d 123

Filed May 3, 1985.   No. 84-876.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellant.

James B. Gessford of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., for appellee.

Theodore L. Kessner of Crosby, Guenzel, Davis, Kessner & Kuester, for amicus curiae Nebraska State Education Association.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

This court, pursuant to the provisions of Neb. Rev. Stat. § 24-219 (Cum. Supp. 1984), accepted two questions of law certified to it by the U.S. Court of Appeals for the Eighth Circuit. In response thereto we reaffirm our earlier

determination that Neb. Rev. Stat. § 20-148 (Reissue 1983) does not constitute a waiver of sovereign immunity by the State of Nebraska for actions brought in federal court under 42 U.S.C. § 1983 (1982). We also answer that our decision in *Todd v. Board of Educational Lands and Funds*, 154 Neb. 606, 48 N.W.2d 706 (1951), does not constitute a waiver of the State of Nebraska's sovereign immunity for actions brought in federal court pursuant to a contract.

## BACKGROUND

The questions certified to us arise in an action commenced in the U.S. District Court for the District of Nebraska by Chuck R. Patteson against Ray A.C. Johnson. Case No. CV81-L-217 (D. Neb. 1981). Since we do not resolve the matter, we find it unnecessary to set forth all the facts surrounding the dispute; the circumstances under which the case and controversy arose may be found in the opinion of the circuit court in *Patteson v. Johnson*, 721 F.2d 228 (8th Cir. 1983).

It is sufficient for our purposes to note that for a time Patteson was the deputy auditor for this state, having been so appointed by Johnson, the State Auditor. During his tenure as such, Patteson refused to sign an audit because he considered it to be deficient. He also gave certain legislative testimony concerning that audit and another matter. As a consequence, the relationship between Johnson and Patteson deteriorated, and Johnson terminated Patteson's employment with the state.

The district court, Chief Judge Warren K. Urbom, initially dismissed Patteson's civil rights and state law claims against Johnson. Upon remand by the circuit court, *Patteson v. Johnson, supra*, the district court found that reinstatement of Patteson's employment was in order. That court further observed, however, that because of the nature of the relationship between Patteson and Johnson, the chances were "excellent that he [Patteson] would not remain in place for more than a few months and perhaps less and would furnish virtually no useful service as Johnson's deputy." Accordingly, that court offered Johnson, as coextensive relief to Patteson in both the civil rights and state claims presented by the latter's complaint, the alternatives of either reinstating Patteson or paying him the sum of $10,800. The amount to be paid, were

that the alternative selected, was characterized by the district court as representing the salary and other benefits Patteson would accrue if he were to be reinstated for the period he reasonably could be expected to remain. The district court specifically stated the sum was not damages but, rather, was an equitable substitute for a "fruitless and ill-fated reinstatement." See *Patteson v. Johnson*, No. CV81-L-217, slip op. at 5 and 6 (D. Neb. Feb. 24, 1984).

## FIRST QUESTION

The first question certified reads as follows: "Does Neb. Rev. Stat. § 20-148 (1977) constitute a waiver of sovereign immunity by the State of Nebraska for actions brought in federal court under 42 U.S.C. § 1983 (1982)?"

The question arises by virtue of the 1977 enactment of § 20-148, now found in the 1983 Reissue of the Revised Statutes of Nebraska, which provides:

(1) Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

(2) The remedies provided by this section shall be in addition to any other remedy provided by Chapter 20, article 1, and shall not be interpreted as denying any person the right of seeking other proper remedies provided thereunder.

This court, subsequent to certification of the question, decided *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984). That decision analyzed the issue and answers the question in the negative. Further discussion of that question and the rationale for our answer is, therefore, unnecessary.

## SECOND QUESTION

The second question reads: "Does the decision of the Nebraska Supreme Court in *Todd v. Board of Educational Lands & Funds*, 154 Neb. 606, 48 N.W.2d 706 (1951), constitute

a waiver of the State of Nebraska's sovereign immunity for actions brought in federal court pursuant to a contract?"

### Applicable Federal Principles

While it is not within our province to rule upon questions of federal law in this inquiry, and we do not undertake to do so, we review briefly certain federal principles relating to the issue of sovereign immunity in order to provide a setting for our analysis of the applicable Nebraska law.

The eleventh amendment to the U.S. Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." However, the notion of sovereign immunity antedates eleventh amendment immunity and is a separate and distinct concept. "A finding respecting either the waiver or the applicability of one does not necessarily mandate the same result as to the other." *Karpovs v. State of Miss.*, 663 F.2d 640, 645 (5th Cir. 1981).

The U.S. Supreme Court, in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984), stated that "the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III."

The Court went on to say:

"That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that *the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given*: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification." *Ex parte State of New York No. 1*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921) (emphasis added).

104 S. Ct. at 907.

In construing the scope of this immunity, the U.S. Supreme Court has held that, generally, suits against a state for prospective injunctive relief are permitted in limited circumstances, *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), but that suits against the state treasury are barred. *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). In *Pennhurst, supra,* the Court explained that "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." 104 S. Ct. at 909. Where the action is one for the recovery of money, the immunity extends beyond the state and includes state officials and employees because " 'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.' " *Karpovs v. State of Miss., supra* at 643, quoting *Ford Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S. Ct. 347, 89 L. Ed. 389 (1945).

Although a state may waive its eleventh amendment immunity from suit in the federal courts, such a waiver will only be found where stated by the most express language or by such overwhelming implication from the text as leaves no room for any other construction. *Pennhurst, supra; Edelman v. Jordan, supra; Murray v. Wilson Distilling Co.*, 213 U.S. 151, 29 S. Ct. 458, 53 L. Ed. 742 (1909).

While Congress has the power to abrogate the eleventh amendment immunity with respect to fourteenth amendment rights, such must be done with an unequivocal expression of the intent to overturn the constitutionally guaranteed immunity of the several states. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that 42 U.S.C. § 1983 does not override a state's eleventh amendment immunity).

It is well established that a state's waiver of sovereign immunity in its own courts is not a waiver of the eleventh amendment immunity in the federal courts. *Pennhurst, supra; Petty v. Tennessee-Missouri Comm'n*, 359 U.S. 275, 79 S. Ct. 785, 3 L. Ed. 2d 804 (1959).

Finally, the U.S. Supreme Court stated in *Pennhurst, supra*, that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued" (emphasis in original), 104 S. Ct. at 907, and went on to explain in a footnote that "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." 104 S. Ct. at 907 n.9. See, also, *Petty v. Tennessee-Missouri Comm'n, supra*.

Nebraska Law Other Than *Todd*

Neb. Const. art. V, § 22, provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." ·

In *Gentry v. State*, 174 Neb. 515, 517-18, 118 N.W.2d 643, 645 (1962), we stated: "This provision permits the state to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe. This provision of the Constitution is not self-executing. Legislative action is necessary to make it available." It is this principle which was applied in *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984).

The Nebraska Legislature has enacted statutes which allow the state to be sued in its own courts. In addition to the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981), and the Administrative Procedures Act, Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1981), the Legislature has authorized the bringing of suit against the state in its several district courts upon a variety of other claims. Neb. Rev. Stat. § 24-319 (Reissue 1979).

Neb. Rev. Stat. § 24-324 (Reissue 1979) further provides in part: "The state may be sued in the district court of the county wherein the Capital is situated in any matter founded upon or growing out of a contract, express or implied, originally authorized or subsequently ratified by the Legislature, or founded upon any law of the state." It also specifies certain pleading and service requirements.

We have considered these statutes, or their forerunners, and have held that the procedures contained therein are jurisdictional and must be complied with in order to sue the state. *Pickus v. State*, 115 Neb. 869, 215 N.W. 129 (1927);

*McNeel v. State*, 120 Neb. 674, 234 N.W. 786 (1931).

### Effect of *Todd*

.With that background in mind we turn to the question at hand. Since waiver of this state's sovereign immunity from suit in the federal courts rests with the Legislature, a more accurate phrasing of the question is whether *Todd v. Board of Educational Lands and Funds*, 154 Neb. 606, 48 N.W.2d 706 (1951), interprets any enactment of the Nebraska Legislature as constituting a waiver of this state's sovereign immunity for actions brought in federal court pursuant to contract. In *Todd* the plaintiffs brought an action asking for a declaration of their rights. Specifically, they wanted to know whether the assignment provisions in a school land lease could be modified by subsequent legislation. Todd assigned his school land lease to another. When Todd and his assignee applied to the Board of Educational Lands and Funds for approval of the assignment, they were ordered to comply with a new provision enacted by the Legislature subsequent to the creation of Todd's original lease. Todd and the assignee then brought an action in the district court for Lancaster County, Nebraska, alleging that the subsequently enacted law was not applicable to the lease and that if the Legislature intended the law to apply retrospectively, it was invalid and unconstitutional because it would violate both federal and state constitutional mandates and prohibitions. The district court sustained the board's demurrer and dismissed the case.

We reversed the district court's judgment, holding that the new legislation did not apply to Todd's lease. In doing so we reasoned:

> The quoted provision of the statute existed from 1899 to 1947 without change. Laws 1899, c. 69, § 18, p. 310, appearing as § 72-241, R.S. 1943. There was during that period no statutory prohibition and no other condition of an assignment of a school land lease. In the absence of statutory or contractual restrictions, a lease for a definite term may be assigned by the lessee without the consent of the lessor. Towle v. Morrell, 129 Neb. 398, 261 N.W. 827; Annotation, 70 A.L.R. 486; Annotation, 23 A.L.R. 135; 32 Am. Jur., Landlord and Tenant, § 319, p. 293.

This is true of a lease made by the state. It, by entering into a contract, abandons its attributes of sovereignty and binds itself, to the extent of its power to contract, substantially as an individual does when he makes a contract. The state may not impair any of the substantial rights secured by its contract to a citizen with whom it contracts. Poindexter v. Greenhow, 114 U.S. 270, 29 L. Ed. 185, 5 S. Ct. 903; Carr v. State ex rel. Coetlosquet, 127 Ind. 204, 26 N.E. 778, 11 L.R.A. 370, 22 Am. S.R. 624; Woodruff v. Trapnall, 10 Howard 190, 13 L. Ed. 383; 12 Am. Jur., Constitutional Law, § 400, p. 32.

The insertion in the act of 1947 of the provisions that "No lease shall be sublet or assigned without the written approval of the board" (§ 72-233, R.R.S. 1943) and "* * * that the lessee shall not sublease or otherwise dispose of said lands without the written consent of the board * * *" (§ 72-234, R.R.S. 1943) directly and strongly supports the meaning ascribed herein to the provision concerning the assignment of a school land lease as it was before that act was passed.

The Board of Educational Lands and Funds in leasing school land is limited by the authority granted it by the Legislature. It has no other power. The law on the subject in force at the time of the execution of a lease is a part thereof and determines the rights of the lessee. A lease made in compliance with the direction and permission of the Legislature between the state and the lessee is a contract and is property. The rights resulting from the contract vest on its execution and delivery. The state may not subsequently by legislation deprive the lessee of any substantial right secured to him by the lease. Constitutional guaranties and prohibitions safeguard it. These include the mandate that no state shall deprive any person of property without due process of law; no state shall enact any law impairing the obligations of a contract; and the property of no person shall be taken or damaged for public use without compensation. State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 166 A.L.R. 1196; Reavis v. State, 140 Neb.

442, 300 N.W. 344; Stanser v. Cather, 85 Neb. 305, 123 N.W. 316; Hile v. Troupe, *supra*; State ex rel. Patterson v. Wenzel, 55 Neb. 210, 75 N.W. 579; State ex rel. Beer v. Thayer, 46 Neb. 137, 64 N.W. 700; State ex rel. Brown v. McPeak, 31 Neb. 139, 47 N.W. 691.

154 Neb. at 610-11, 48 N.W.2d at 710.

Patteson claims that our statements in *Todd* indicate that the state has waived its immunity from suit, both in the state and federal courts, on claims arising out of contracts. To support his assertion he refers us to *Smith v. Hanlon*, No. CV81-L-273 (D. Neb. Dec. 17, 1982), *rev'd on other grounds, Smith v. Sorensen*, 748 F.2d 427 (8th Cir. 1984), which held, among other things, that *Todd* did waive the state's immunity from suit in federal court in a contract action.

In *Smith*, employees of CETA, a division of the Department of Labor of the State of Nebraska, brought an action challenging attempted layoffs as violations of their civil rights under 42 U.S.C. § 1983 (1982) and 28 U.S.C. § 1343(3) (1982). The State of Nebraska, the Department of Labor, and the Joint Merit System were named as defendants. The defendants claimed immunity from suit under the eleventh amendment. In denying those claims Chief Judge Warren K. Urbom reasoned:

> While it is true that states and state agencies such as those mentioned are immune from suit, see *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), that immunity may be waived in certain instances. In cases where an action is founded on contract, the Supreme Court of Nebraska has held that the state "by entering into a contract, abandons its attribute of sovereignty and binds itself, to the extent of its powers to contract, substantially as an individual does when he makes a contract." *Todd v. Board of Ed. Lands*, 154 Neb. 606, 610, 48 N.W.2d 706, 710 (1951).

> It is true that the *Todd* case involved a lawsuit in Nebraska state court. As such, it may be argued that the waiver in the case does not extend to a federal court, as it is not a clear manifestation of intent to waive immunity. See *Kennecott Copper Corp. v. State Tax Commissioner*, 327 U.S. 573, 577 (1946); *Riggle v. State of California*, 577

F.2d 579, 585 (C.A. 9th Cir. 1978). The language of *Todd*, however, is extremely broad in terms of the courts in which the waiver is effective. I do not believe that the waiver always need name federal courts to be effective therein; it is enough that the state is permitted as any individual to sue or be sued, when it is a contracting party. I also note that the court in *Todd* cited *Poindexter v. Greenhow*, 114 U.S. 270 (1884). *Poindexter*, held that Eleventh Amendment concerns do not erect an immunity for cases in federal court based on an alleged unconstitutional impairment of contract by a state when the state is one of the contracting parties. 114 U.S. at 286. It would be anomalous not to extend the reasoning in the *Todd* court used in citing *Poindexter* for the constitutional prohibition on impairment of contracts to a claim under the Fourteenth Amendment based on an unconstitutional deprivation of contractural [sic] rights, when the state is one of the contracting parties. To do otherwise would dictate contrary results for identical contract suits based on different parts of the Constitution. Accordingly, I shall not dismiss the State of Nebraska, the Department of Labor, and the Joint Merit System as defendants, as I do not believe they possess sovereign immunity in this court on these claims.

*Smith v. Hanlon, supra*, slip op. at 12.

Although the members of this court have the greatest respect for the learned Judge Urbom, the fact remains that it is this court which is the final arbiter in matters of Nebraska law. This court must, therefore, make its own analysis and reach its own conclusion with respect to the question presented. *Beal v. Missouri Pacific R. Co.*, 312 U.S. 45, 61 S. Ct. 418, 85 L. Ed. 577 (1941); *Neal v. School Dist. of York*, 205 Neb. 558, 288 N.W.2d 725 (1980).

This court finds it cannot agree with Chief Judge Urbom's analysis of *Todd v. Board of Educational Lands and Funds*, 154 Neb. 606, 48 N.W.2d 706 (1951).

It is noted, first of all, that *Todd* was not interpreting a legislative enactment concerning whether the state *could* be sued; that issue was not present. Rather, *Todd* was concerned

with whether a legislative enactment could be applied so as to hinder or impair a preexisting contract. Thus, this court's observations about the application of constitutional contract principles to the state must be read in that context. See *Yoder v. Nu-Enamel Corporation*, 140 Neb. 585, 300 N.W. 840 (1941).

*Todd* was brought in the district court for the county in which the state's capital is located to determine the plaintiffs' rights with respect to a school land lease obtained from the Board of Educational Lands and Funds. Such an action is permitted by § 24-319(5), both as it existed then and as it exists now. Section 24-324 (Reissue 1948) provided then, as it does today, that the state may be sued in the district court of the county where the capital is located in matters of contract.

The *Todd* discussion of an individual's constitutional rights with respect to contracts and the limitations on the state to impair those rights is aimed at pointing out the reasons that the legislation at issue therein could not be applied retroactively. As noted earlier in our discussion concerning the applicable federal principles, it does not follow from a state's consent to be sued in its own courts that it has waived its immunity to be sued in federal court. *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984).

Neither does the *Todd* discussion of a citizen's federal constitutional rights in any sense imply a waiver of the state's immunity from suit in the federal courts. State courts, after all, have as great a constitutional obligation to uphold and protect the federal Constitution and law as do the federal courts. See *Hathorn v. Lovorn*, 457 U.S. 255, 102 S. Ct. 2421, 72 L. Ed. 2d 824 (1982), *reh'g denied* 458 U.S. 1131, 103 S. Ct. 15, 73 L. Ed. 2d 1401. See, also, *State v. Jones*, 209 Neb. 296, 307 N.W.2d 126 (1981). It was that obligation, among others, which *Todd* fulfilled.

There is nothing in *Todd* which holds that any enactment of the Nebraska Legislature contains an unequivocal expression of the state's consent to waive its sovereign immunity from suit in the federal courts pursuant to a contract. Accordingly, we answer the second question in the negative.

JUDGMENT ENTERED.