STATE OF NEBRASKA, APPELLEE, V. LOUISE MORRIS, APPELLANT.

541 N.W.2d 423

Filed December 26, 1995. No. A–94–1197.

Peter K. Blakeslee for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

HANNON, Judge.

The defendant, Louise Morris, appeals her convictions resulting from a jury trial for one count of first degree sexual assault on a child and two counts of sexual assault of a child. On appeal, Morris claims that the district court erred (1) in admitting four State's witnesses' testimony relating what the victims had told each of them as prior consistent statements pursuant to Neb. Evid. R. 801(4)(a)(ii), Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1989), and (2) in imposing excessive sentences. Morris relies upon a recent U.S. Supreme Court decision interpreting a comparable federal rule of evidence to require a showing, before the prior consistent statement is admissible, that the statement had been made before the charged

undue influence or recent fabrication occurred. We conclude that the Nebraska Supreme Court has interpreted rule 801(4)(a)(ii) to not require such a showing and that the ruling of the U.S. Supreme Court is an interpretation of a federal rule of evidence and not a pronouncement of federal constitutional law. We find that the trial court did not err in admitting the prior consistent statements, nor did the court abuse its discretion in sentencing Morris. We therefore affirm.

## BACKGROUND AND FACTS

In November 1993, Morris was charged with one count of first degree sexual assault on a child and one count of sexual assault of a child for assaults on her daughter, Nicole T., and one count of sexual assault of a child for assaults on her son, Jason T. These assaults allegedly occurred from January 1983 to December 1988, when Nicole was between 4 and 10 years of age and when Jason was between the ages of 1 and 7.

Morris and Gene T. married in June 1978. Their daughter, Nicole, was born on October 30, 1978, and their son, Jason, was born on October 7, 1981. They lived in a mobile home south of Seward, Nebraska, and later moved to a house in Seward. Morris left the family home in March 1989 and moved to Grand Island, Nebraska. Within a month and a half she started living with a man she had been seeing before her separation. They later married. The children remained in Gene's home, and he was awarded their custody in the final divorce decree, entered in January 1990. Prior to the decree, a guardian ad litem for the children was appointed in the divorce proceeding, and during Morris' criminal trial, the guardian testified that neither child gave any indication that they were sexually abused when he interviewed them back in 1989. Gene testified that until October 1992, he had no indication that his children were sexually abused.

Gene started living with Jenny B. in February 1990, and they married the following November. Morris had visitation with the children, but she testified that Gene and Jenny made it difficult and then impossible to visit the children. Morris and her husband later moved to Arizona, and she claims that after a few unsuccessful attempts to contact the children by letter or phone she stopped trying. Gene's testimony tended to support Morris'

assertion that he and Jenny made it difficult, if not impossible, for Morris to visit and correspond with the children. Jenny admitted she did not get along with Morris.

Gene testified that Jason did not have nightmares or frequently wet his bed prior to Morris' leaving the house. However, after Jenny moved in, Gene and Jenny started having problems with Jason. Jenny testified that Jason became violent, got upset, used profanity, had nightmares, and frequently wet the bed. On one occasion while Jenny was babysitting some other children, Jason produced a knife and talked as if he intended to hurt them. At about the same time, Gene and Jenny grew concerned with Nicole's loss of weight and found treatment for her at "Pioneer." Gene and Jenny took Jason to Pioneer for treatment. After a couple of sessions at Pioneer, Jason was taken to Lincoln General Hospital in July 1992, where he stayed for approximately 3 months. It was determined that he required long-term treatment, and Gene and Jenny admitted him to Epworth Village, a residential treatment center for children.

In October 1992, Gene and Jenny visited Jason at Epworth Village, and when he got into their car, he told them that he had started counseling with Sandra Kroeker and that she thought he was sexually abused by his mother. He told them that his sister, Nicole, knew about it. When they attempted to talk with Nicole regarding the matter, she ran upstairs and began beating her head on the floor. Jenny testified that both children admitted being sexually abused by Morris but neither was asked by Gene and Jenny to relate any details of the abuse to them.

Jason was 12 years old when he testified. His testimony was elicited by the prosecution through a series of leading questions to which, for the most part, Jason's answers were one or two words long. Jason testified that he considers his "private parts" to be his penis and that his mother touched his private parts. He could not remember the details of the first time this happened, other than to say his pants were off, and he was in his parents' bedroom in the mobile home. Jason was about 3 at the time. He testified that when he was about 5 or 6, the family moved to a different house and that his mother again touched his private parts. He stated that sometimes he would have his clothes on

and that sometimes he would be naked, and sometimes his sister would be present. He did not remember many details when he was questioned. He testified that his mother touched him on more than one occasion, that he touched her, and that he and his sister touched each other at their mother's direction. His mother told him never to tell anyone about these incidents. He testified that he was very angry at his mother for leaving and that he wanted her back.

Nicole was a sophomore in high school when she testified. She lived in the mobile home until she was 6 or 7 and then moved with her family into the house. She was in the fourth grade when her parents were divorced. She testified that her understanding of "private parts" is her breasts and vagina. When she lived in the mobile home, her mother touched her private parts a couple of times a week, sometimes while she was clothed, and other times while she was not. After they moved, her mother continued to touch her, but not as often, because Nicole was in school. She testified that most of the time, her mother would take her clothes off as well and that they would lie on the bed and touch each other's private parts. She testified that her mother used her fingers to vaginally penetrate her more than once. She also testified that she and Jason touched one another, because their mother told them to do so. She also witnessed her mother touching Jason. She also testified that her mother brought her to as many as five men's houses, that they touched her, and that her mother knew that this was occurring. She could not describe the events with these men in any detail, except to say that the men were older.

The timeframe for these events was from the time Nicole was 4 or 5 until her mother left, when Nicole was 10. She did not tell anyone before Jason had told because her mother told her not to tell. She denied the assertion that the investigating officer convinced her that her mother was touching them at such an early age and that the investigating officer suggested to her that the men abused her.

Gene admitted that he and Jenny supplied all the information contained in the Lincoln General Hospital records, and he denied that it was slanted and that they portrayed Morris in an unfavorable light.

The prosecution also called Dr. Kathryn Benes, a psychologist who evaluated Jason at Lincoln General Hospital prior to his counseling with Kroeker. Benes testified that Jason was suffering from depression and posttraumatic stress disorder. She had specifically asked Jason if anyone had touched him in a way that he felt was uncomfortable, and Jason had responded no.

Kroeker, a clinical social worker, testified that during her first visit with Jason, on October 29, 1992, he told her that his mother sexually abused him. Jason told her that his mother would pick him up from school, bring him home, remove his pants, and rub his penis while lying on his bed. He also told Kroeker that his mother would rub his penis with her breasts, and she would have him touch her breasts and vagina. She also had him dress in girls' clothes and masturbate his sister while his mother watched. Jason's verbatim statement, as penned by Kroeker, was also admitted into evidence without objection during her testimony.

On cross-examination, Kroeker stated that based in part on the family history report supplied by Lincoln General Hospital that she reviewed before interviewing Jason, she determined that Jason may have been sexually abused. She stated that indications on the report that the mother was sexually promiscuous and that there was a possibility that Nicole had been sexually abused led to her conclusion.

Sherry Lave, the police officer who was assigned to interview Nicole at the time the abuse was reported, testified to the details that Nicole told her about Morris' sexual abuse of both children. The defense did not object to the testimony of the above witnesses or assign the issue as error in this appeal.

The hearsay issue in this case arises on the basis of four witnesses who testified to what Nicole or Jason told them over the defense's continuing hearsay objection. These witnesses were Eunice Williams, the director of therapeutic services and a psychotherapist at Epworth Village; Gordon Hall, the director of life skills training at Epworth Village, who provided weekly individual therapy for Jason during his 6-month stay at Epworth Village; Christy Weber, a registered nurse employed at Epworth Village as the director of health care services and admissions coordinator; and Karl Hoehler, a deputy sheriff of Seward

County who was involved in the investigation of Jason's allegations. Williams, Hall, and Weber testified that during the course of their respective professional duties Jason told them that Morris had sexually abused him. Jason made statements to these witnesses shortly after he made the statements to Kroeker and to his father and stepmother. Williams also testified that Nicole told her Morris had sexually abused her and her brother, but she did not describe the details to Williams. Hoehler elicited the details from Jason that one would expect an investigating police officer to elicit, and he related these details to the jury.

Morris testified and denied any improper conduct with her children. The defense also called a counselor from Lincoln General Hospital who took the family history from Gene and Jenny in July 1992. This witness established that they reported the possibility that Morris had abused drugs and alcohol during her pregnancy with Jason; that Morris' parental rights were terminated through the court system; and that she was sexually promiscuous, occasionally in the presence of Jason and his sister.

A trial was held on September 6, 7, and 8, 1994. The jury found Morris guilty on all counts. Prior to sentencing, Morris moved for a new trial, and the motion was overruled. Morris was sentenced to not less than 15 nor more than 20 years' imprisonment on the first degree sexual assault conviction and not less than 1 nor more than 5 years' imprisonment on each sexual assault of a child conviction, and all sentences were to be served consecutively.

## ASSIGNMENTS OF ERROR

Morris alleges that the trial court erred (1) in overruling her objections on hearsay grounds to statements made by four State's witnesses regarding their respective testimony of what each was told by the victims and (2) by imposing excessive sentences.

## STANDARD OF REVIEW

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial

discretion is a factor involved in admissibility of evidence. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994); *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994); *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993).

## ERRORS IN ADMISSION OF TESTIMONIAL EVIDENCE

■ Morris argues that the trial court erred in allowing the testimony of Williams, Hall, Weber, and Hoehler relating what the children told them about the sexual abuse suffered at their mother's hands. Morris argues that these statements are hearsay and do not fall within any exception. Morris notes that the trial court believed the evidence was admissible as prior consistent statements under rule 801(4), which provides:

> A statement is not hearsay if:
>
> (a) The declarant testifies at the trial or hearing and is subject to cross–examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him [of] recent fabrication or improper influence or motive.

In the latter part of this opinion we consider Morris' argument that statements of the four witnesses do not qualify as prior consistent statements under *Tome v. U.S.*, ____ U.S. ____, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995), and we conclude that if *Tome* controlled this case, the statements would not be admissible. However, this case was tried before the *Tome* decision was released, and therefore Morris' counsel sought to exclude the testimony of the four witnesses under existing Nebraska authority, which is in conflict with *Tome*. The time sequence also explains why defense counsel did not object to testimony of other witnesses who related statements that appear to be prior consistent statements to the same degree as the statements to which Morris did object. We shall first consider whether the testimony is admissible under Nebraska authority.

*Admissibility Under Nebraska's Interpretation of Rule 801(4)(a)(ii).*

For a statement to be admissible under rule 801(4)(a)(ii), the declarant must testify at trial and be subject to cross–

examination concerning the statement. These requirements are met. In addition, the statement must be consistent with the declarant's testimony and be offered to rebut a charge of recent fabrication or improper influence or motive.

Morris asserts that Jason's trial testimony was not consistent with the four witnesses' testimony. She argues that Jason could not remember any details of what had happened to him and that only after answering leading questions could he describe what he had told Kroeker his mother did. We do not agree. Our review of the testimony shows Williams, Hall, and Weber all essentially testified that Jason told them that he had been sexually abused by his mother and that his mother had touched his private parts or he had touched his mother's or sister's private parts. Hoehler's testimony was more detailed; however, there is nothing in his testimony that was not consistent with Jason's testimony.

A similar argument was put forth by the defendant in *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992). In that case, the Supreme Court held that when a witness relates a prior statement of the victim which contains more details than the victim's in-court testimony, the prior statement is consistent when the additional details are not contradictory to or collateral to the victim's testimony. Similarly, in the case at hand, when the children's in-court testimony is compared to the testimony of the four witnesses as to what the children told them, the facts related, although not identical, are consistent.

Morris claims that she showed that Gene and Jenny practiced fabrication and undue influence between the time the children talked to the guardian ad litem and to Benes, when they did not refer to any abuse, and the October 29, 1992, statements made by Jason to Kroeker. Morris argues that Gene and Jenny's recitation of the family history information suggested to Kroeker and her colleagues at Epworth Village that Jason was being subjected to abuse of some kind. With this in mind, Kroeker unduly influenced Jason into making incriminating statements regarding Morris. Perhaps the evidence would support a finding of improper influence; however, the evidence clearly is not sufficient to require such a finding on the part of either the trial court or the jury.

Nebraska case law has consistently interpreted rule 801(4)(a)(ii) as admitting prior consistent statements when the opponent implies the witness' testimony is false, even when the other side makes the charge of recent fabrication during the cross-examination of the witness during trial. For example, in *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993), a child victim's statement to a police officer, which was made 3 days after the child reported the abuse to her parents, was ruled admissible pursuant to rule 801(4)(a)(ii). The Supreme Court stated:

> Tlamka's counsel asked her who had taught her to say "private," "wee wee," and "rock hard," the implication being that someone had coached J.H. in articulating the assault. By this line of questioning, Tlamka's counsel implied that J.H.'s testimony was the product of improper influence. J.H.'s statement on the stand was consistent with what she told Officer Lantis. Therefore, J.H.'s statements to the officer could have been properly admitted under rule 801(4)(a)(ii).

244 Neb. at 680, 508 N.W.2d at 852.

In *State v. Smith*, 241 Neb. 311, 488 N.W.2d 33 (1992), the Supreme Court held that the admission of a consistent note in a diary offered and received on direct examination of the victim was not admissible as a prior consistent statement, because at the time the diary was offered the defendant had yet to claim the testimony of the victim was a fabrication. In the case at hand, the victims testified before the statements were offered, and at least in cross-examination of them, Morris implied that the children's testimony was a fabrication. The following cases also contain holdings similar to that in *Tlamka*: *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985); *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985); *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980); *State v. Chaney*, 184 Neb. 734, 171 N.W.2d 787 (1969).

In *State v. Austin*, 1 Neb. App. 716, 510 N.W.2d 375 (1993), the Court of Appeals addressed and discussed in detail whether rule 801(4)(a)(ii) allows only those statements made before the charged recent fabrication or improper influence or

motive. The *Austin* court examined the authorities on the issue and held that to be admissible, a prior consistent statement need only predate the trial testimony with which it is consistent.

During cross–examination of the children, Morris' attorney sought to imply that Kroeker improperly influenced Jason during their interview. Neither child admitted to any improper influence, and no improper motive on the part of the children is suggested. Nonetheless, Morris now urges that the "recent fabrication or improper influence or motive" occurred during Kroeker's interview on October 29, 1992. If a defendant could exclude prior consistent statements simply by implying that the first statement made on the subject was the recent fabrication or was due to improper influence or motive, then of course no prior statement would be admissible. Put another way, a charge that the initial consistent statement was a fabrication is also a charge that the statement testified to by the witness is a fabrication. In *Tlamka*, a cross–examination that implied the witness was not telling the truth was sufficient to allow the admission of the prior consistent statement. We think the rule applies to this case, even though Morris implies the first statement was the untruthful one.

### U.S. Supreme Court Decision Tome v. U.S.

Morris relies upon the analysis and holding of the recent U.S. Supreme Court decision *Tome v. U.S.*, ____ U.S. ____, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995). In *Tome*, the child victim testified that her father sexually abused her. The father asserted as his defense that the child was subjected to undue influence, causing the child to make the incriminating statements. The prosecution then called six witnesses who testified to statements the child made after the time when Tome alleged that the child was subjected to the undue influence. The trial court allowed the testimony, finding that the evidence was admissible pursuant to Fed. R. Evid. 801(d)(1)(B), which is the same as Neb. Evid. R. 801(4)(a)(ii). The Supreme Court reversed the trial court's ruling and stated: "The Rule permits the introduction of a declarant's consistent out–of–court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made

*before* the charged recent fabrication or improper influence or motive." (Emphasis supplied.) 115 S. Ct. at 705.

The Court explained:

> [A]dmissibility under the Rules is confined to those statements offered to rebut a charge of "recent fabrication or improper influence or motive," the same phrase used by the Advisory Committee in its description of the "traditiona[l]" common law of evidence, which was the background against which the Rules were drafted. See Advisory Committee Notes, *supra*, at 773. Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited. In the present context, the question is whether A.T.'s out-of-court statements rebutted the alleged link between her desire to be with her mother and her testimony, not whether they suggested that A.T.'s in-court testimony was true. The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told.

115 S. Ct. at 701.

Morris urges this court to revisit the holding in *Tlamka* and the other cases cited above in light of the decision in *Tome*. We agree that if *Tome* controls the admission of the testimony of the four witnesses, the statements the children made to them would be inadmissible as hearsay. However, we conclude that *Tlamka* and similar Nebraska Supreme Court decisions control.

*Tome* interprets Fed. R. Evid. 801(d)(1)(B), not Neb. Evid. R. 801(4)(a)(ii). The two rules are the same. We are bound by the decisions of the Nebraska Supreme Court in matters of state law, and we are bound by the decisions of the U.S. Supreme Court in matters of the U.S. Constitution and other federal questions. See, *Wisconsin v. Mitchell*, 508 U.S. 476, 113 S. Ct. 2194, 124 L. Ed. 2d 436 (1993) (recognizing U.S. Supreme Court is bound by state's highest court's interpretation of state statute); *Patteson v. Johnson*, 219 Neb. 852, 367 N.W.2d 123 (1985). We realize that the Nebraska Supreme Court frequently looks to federal cases in the interpretation of state law when state law is patterned after federal law, such as in discrimination cases. See *Ventura v.*

*State*, 246 Neb. 116, 517 N.W.2d 368 (1994). Indeed, in *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985), the Supreme Court examined federal cases for aid in the construction of rule 801(4)(a)(i) because that rule was patterned after the federal rule.

 We understand the rule to be as stated in *Gourley v. Chicago & E. I. Ry. Co.*, 295 Ill. App. 160, 174, 14 N.E.2d 842, 847 (1938), by way of a quote from an earlier Illinois case:

> "The decisions of that court [U.S. Supreme Court] are always entitled to great consideration and this court has never grudgingly yielded to them the deference which is due to so distinguished a tribunal, still, when its decisions conflict with those of this court upon questions over which this court has complete and final jurisdiction, it is our plain duty, under the law, to adhere to our own decisions. . . . In respect to questions of general law the State courts are required to follow the decisions of the highest court of the State and are not bound by the authority of the Supreme Court of the United States, and particularly is this true where it would be necessary to overrule previous State decisions in order to conform to the views of the Federal court. . . ."

See, also, 21 C.J.S. *Courts* § 158 (1990).

We conclude that we are bound by the Nebraska Supreme Court's interpretation of rule 801(4)(a)(ii). Therefore, having found that the statements made to and repeated by Williams, Hall, Weber, and Hoehler were prior consistent statements under *Tlamka*, we conclude that they are admissible under rule 801(4)(a)(ii).

We also note that in addition to the four witnesses to whose testimony Morris objected, the children, the father, the stepmother, Kroeker, and another police officer testified to the same or similar instances when the children had made prior statements that were consistent with their in-court testimony. We recognize that the procedure was followed by Morris' counsel in an attempt to create error under the *Tlamka* holding, the only course open to him at the time. However, this tactic had the effect of letting into evidence many prior consistent statements that would have been excluded under *Tome*, and thus

the testimony of the four witnesses to which Morris did object was cumulative and could not have prejudiced Morris.

## EXCESSIVE SENTENCES

■ Morris alleges that the trial court erred by imposing consecutive sentences of 1 to 5 years' imprisonment for each of the two convictions of sexual assault of a child, Class IV felonies, and 15 to 20 years' imprisonment for the one conviction of first degree sexual assault on a child, a Class II felony. The possible sentence for the Class II felony is 1 to 50 years' imprisonment, and for each Class IV felony is 0 to 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985). Nebraska law is well settled on the issue of sentences imposed that are within the statutory limits. A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Hall*, 242 Neb. 92, 492 N.W.2d 884 (1992); *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992). An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. See *State v. Hall, supra.*

Morris' sentences are clearly within the statutory limits, and the record does not reveal that in sentencing her, the trial court's reasons or rulings were clearly untenable or unfairly deprived Morris of a substantial right and just result. Therefore, we conclude that the trial court did not abuse its discretion in sentencing Morris, and the sentences imposed by the trial court are affirmed.

## CONCLUSION

Having found that the State's witnesses' statements regarding what the victims had told them were prior consistent statements, we conclude that the trial court properly admitted these statements under rule 801(4)(a)(ii). Additionally, the sentences imposed by the trial court were well within the statutory limits, and we find that the trial court did not abuse its discretion in imposing such sentences. The rulings of the trial court are affirmed.

AFFIRMED.